FRED G. MERRIMAN, JR., v. O. H. LEWIS and M. C. LEWIS, as Co-Partners trading and doing business as Lewis Candy and Tobacco Company.

194 So. 349
Division A
Opinion Filed February 20, 1940
Rehearing Denied March 18, 1940

*G. P. Garrett* and *Donald Walker,* for Plaintiff in Error; *Maguire, Voorhis & Wells,* for Defendant in Error.

BUFORD, J.—On writ of error we review order granting new trial after verdict in favor of plaintiff.

New trial was granted on grounds 1 to 7, inclusive, and 23 and 25. Grounds 1 to 7, inclusive, of the Motion were:

"1. That the said verdict is against the evidence.

"2. That the said verdict is not supported by the evidence.

"3. That the verdict is contrary to the weight of the evidence.

"4. That the verdict is contrary to law.

"5. That the verdict is contrary to law and the evidence.

"6. That the verdict is grossly excessive.

"7. That the verdict indicates that the jury were actuated by sympathy, prejudice or otherwise than by the evidence in the case."

Grounds 23 and 25 were:

"23. There is no evidence that the defendants were actuated by express malice in making and filing with the Hartford Accident & Indemnity Company the proof of claim complained of."

"25. The verdict is contrary to the law as given by the Court in certain charges requested by defendants."

Unless ground 23 stated a legal reason for granting a new trial, the other grounds upon which the new trial was granted were without merit. Of course, if that ground was well founded, then the other mentioned had merit.

It is well settled that express malice may be inferred from the intemperate character of the language used in the alleged libel or when the language used is utterly beyond and disproportionate to the facts, or even where improper motives are unnecessarily imputed. Newell on Libel and Slander, 4th Ed.; 328.

Where it is shown that the alleged perpetrator of the libel knew that the statement was false when made, express malice will be conclusively presumed. 37 C. J. 84, 18 Am. Eng. Enc. of Law (2) 1007-1013; Newell on Libel and Slander, 4th Ed., 318.

The libel complained of was in the following language:

"Hartford Accident and Indemnity Co., Hartford, Connecticut.

"FRED G. MERRIAM
"(Name of Principal)
"LEWIS CANDY & TOBACCO COMPANY
"(Bond No. 1415443 Name of Insured)

"I, M. C. Lewis, co-partner and manager (If corporation, title of party making this affidavit must appear after his name) of Orlando, Florida, hereby certify that on or about August 6, 1936, (I, we or this company) *we suffered loss through the* dishonesty of Fred G. Merriman employed as salesman and collector and that the amount of money dishonestly misappropriated by said Fred G. Merriman amounts to one hundred eighteen 15/100 dollars ($118.15) ; that the following is a detailed statement of

said loss, and of all sums due or owing said employee, and the balance stated below is the true net loss from_____ 19____, to August 12, 1936.

| Date | Description of Item | Amount | Total |
|------|---------------------|--------|-------|
| "Aug. 9/36 | Sales ticket dated July 9, 1936, No. 9072 covering transfer of merchandise for which Fred G. Merriman obtained credit but which was not delivered by him to the person shown as purchaser on the ticket ____ | $83.15 | |
| "Aug. 6/36 | Cash Shortage _____ | 35.00 | |

Total Loss _____.

*Credits*

By salary _____

By commission _____

By cash _____

Other credits (including securities, notes, offsets, etc.) _____

Total credits _____ .

NET LOSS _____ $118.15

"(If additional space is necessary, please use reverse side.)

"I further certify that knowledge of this misappropriation first came to me on or about the 12th day of Aug. 1936; that the manner in which this money was misappropriated is as follows: failure to turn in moneys or merchandise entrusted to him.

" * * * that nothing has been suppressed, withheld, or misrepresented by me material to a knowledge of the facts of said loss, and that the above statement is a complete and truthful recital of the facts.

"There is no other suretyship or insurance under which the above claim, or any portion thereof, is claimable, except the following:

Name of Insurer     Kind of Insurance          Amount

M. C. Lewis
(Official Capacity)

"Sworn to and subscribed before me this 21st day of October, 1936.

"Bertha B. Luke

"Notary Public, State of Florida at Large
"My commission expires July 5, 1937.
"(See instructions on reverse side)"

It was contended by the defendant in the court below, and is contended here, that the communication containing the alleged libel was a privileged one because it constituted the statement of a basis for a claim against the Surety Company which the defendant intended, if necessary, to enforce in a court of law.

Defendants in error rely upon the cases of Ange v. State, 98 Fla. 538, 123 Sou. 916; and Myers v. Hodges, 53 Fla. 197, 44 Sou. 357; Watson v. McEwan, 3 Ann. Cas. 124, App. Cas. (1905) 480; 4 B. R. C. 934, 74 L. J. P. C. N. S. 151, 93 L. T. N. S. 489, on the theory that the affidavit submitted in which the alleged libelous statement was made constituted preliminary proof of loss which was a necessary predicate for the action on the bond.

In all of the above mentioned cases criminal prosecution was involved.

It is true that in the Ange case it was said:

"The doctrine is well settled that defamatory words when used by parties, counsel or witnesses in the due course of judicial procedure, and when relevant to the matter in hand, and pertinent to the subject of inquiry, are privileged and cannot be made the basis of a proceeding for libel or defamation, no matter how false or malicious such statements may in fact be." (Citing Myers v. Hodges, *supra.*)

The Court further said:

"This rule of privilege as applied to statements made in the course of judicial proceedings is not restricted to trials of actions, but includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer."

Insofar as has been pointed out by counsel, this is as far as the rule of privilege in such matters has been extended. We do not think that the facts in the present case come within that rule. Here the record shows that Lewis made the statement above quoted, under oath, for the sole purpose of collecting money from the Surety Company. The record further shows conclusively that at the time the statement was made Lewis knew of no proof that established any dishonest conduct or misappropriation of funds by Merriman. He testified at the trial as follows:

"Q. Mr. Lewis, you were very friendly with Mr. Merriman and his wife at all times, is that correct?

"A. So far as I was concrened.

"Q. And you are still so friendly?

"A. Well, I have passed them several times since—

"Q. I mean you feel friendly toward them?

"A. So far as I am concerned.

"Q. When you swore that he was dishonest, you did that as a friendly act did you?

"A. I didn't swear to anything to that effect, only I was trying to get my money.

"Q. I understand, but you swore here didn't you, on this complaint, Plaintiff's Exhibit 11—you swore to that, didn't you?

"A. I swore to this item right here (indicating).

"Q. You swore to that statement didn't you?

"A. This one right here (indicating).

"Q. The whole thing you swore to, didn't you?

"A. I didn't swear to all of it, as I explained to you, that's what we put in there.

"Q. You understood you were signing a paper which says: 'I, M. C. Lewis, co-partner and manager, of Orlando, Florida, hereby certify that on or about August 6, 1936, we suffered loss through the dishonesty of Fred G. Merriman, employed as salesman and collector, and that the amount of money dishonestly appropriated by said Fred G. Merriman amounts to $118.15.'' You knew you were swearing to that, didn't you?

"A. I knew I was swearing to what was misappropriated.

"Q. You knew you were swearing that he was dishonest, did you not?

"Q. Did you, or didn't you?

"A. I didn't swear that he was dishonest."

The record shows conclusively that the shortage complained of occurred by reason of a mistake in bookkeeping made in the office of the defendant partnership by a bookkeeper employed by the defendant and that there was no misappropriation of funds by the defendant. It also shows that for the defendant to recover on the indemnity bond it was necessary to allege and prove that the loss occurred in the manner contemplated by the surety contract, the provisions of which contract in this regard are as follows:

"(2) That in case a loss is alleged to have been caused by the fraud or dishonesty of one or more of the employees, and the insured shall be unable to designate the specific employee or employees causing such loss, the insured shall nevertheless have the benefit of this bond; provided that the evidence submitted reasonably establishes that the loss was in fact due to the fraud or dishonesty of one or more of the said employees, and provided further that the aggregate liability of the underwriter for any such loss shall not exceed the amount of indemnity carried hereunder on any one of said employees, to-wit, the amount stated in line 9 of this bond.

"(3) That loss is covered hereunder only if the act causing such loss be committed by any employee while this bond is in force as to such employee and if such loss be discovered and reported to the underwriter not later than two (2) years after the termination of this bond in its entirety, or as to such employee, whichever shall first happen.

"(4) That the Insured shall, as soon as it is reasonably possible, and in any event within fifteen (15) days after learning of any fraudulent or dishonest act on the part of any employee, give the underwriter notice thereof, and within four (4) months shall file with the underwriter an itemized statement of claim, duly sworn to, and shall upon request make available for investigation by the underwriter all books and other records relating to the claim."

While proof submitted by Lewis on the trial of the case in the county court against Hartford Accident & Indemnoty Company might not be a proper basis for an action for libel by Merriman, it does constitute cumulative evidence showing express malice on the part of Lewis. That proof was an affidavit in the following language:

"STATE OF FLORIDA, COUNTY OF ORANGE—SS.

"M. C. Lewis being first duly sworn according to law, deposes and says he is one of the plaintiffs in the above styled cause; that he knows the facts hereinafter set forth, and that as alleged in the declaration herein filed, the plaintiffs sustained the loss in the amount of $118.15 through larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, willful misapplication, or other fraudulent or dishonest act or acts on the part of an employee of plaintiffs, which entitles the plaintiffs to payment of said $118.15 from the defendant.

"Sworn to and subscribed before me
    this 23rd day of February, 1938      M. C. LEWIS.
"MARY B. HUFFAKER,
"Notary Public, State of Florida at Large. My ·Commission expires 3/21/38.

"Before me this Feb. 23, 1938—Victor Hutchins Filed
"Feb. 23, 1939—R. T. Overstreet, Clerk County Court by Sara Harris, D. C."

The record shows that this affidavit was without foundation and was made in reckless disregard of the rights of Merriman and, whether Lewis intended it to do so or not, it was calculated to do Merriman irreparable injury.

Our conclusion is that the alleged libelous statement upon which the cause of action rests was not a privileged statement. It would be, indeed, a sad commentary on our system of justice if the courts should hold that an employer, for the purpose of collecting a simple debt which is owed him by an employee, may represent to a Surety Company which had executed a bond guaranteeing the employer against loss by the dishonest acts of the employee and misappropriation of funds by him and may make all sort of false representations imputing dishonesty of and misappropriation of funds by the employee without foundation in

fact and be held immune from answering in damages for libel; and that the employee under conditions is without recourse and without remedy in law against the employer for the damage and wrong done him. Certainly, if the employee may not maintain a suit in damages for libel in such case the constitutional guarantee that the courts shall be open to redress his wrongs is without force and effect, in so far as such wrong is concerned.

This brings us to the next contention, which is that the plaintiff in this suit is estopped by judgment in the suit of Lewis Candy & Tobacco Company v. Hartford Accident & Indemnity Company.

This question was presented in lower court by plea which sought to set up as a defense to this action estoppel by judgment in the case of Lewis Candy & Tobacco Company v. Hartford Accident & Indemnity Company, and to which suit the plaintiff in error here was not a party; but, it is contended that he is estopped by the judgment in that case because he was given the opportunity by Hartford Accident & Indemnity Company to defend that suit and declined to do so. (His reasons for declining are not important here.)

Demurrer was interposed to that plea and sustained.

Discussion of this contention is not necessary to the disposition of this case but we feel that we should express our views in that regard. We do not think that estoppel of judgment applies here, though the doctrine would apply to estop Merriman in a suit brought by Hartford Accident & Indemnity Company against Merriman to recover over from Merriman the loss which that Company sustained by reason of being surety on his bond. In such case, Merriman, having had the opportunity to defend which was tendered him by the Hartford Accident & Indemnity Company, could not decline to defend and thereafter question the propriety of the recovery had against the defendant in that

suit. See 34 C. J. 1031, 1032; 31 C. J. 452, 461; Municipal Service Real Estate Co. v. D. B. & M. Holding Co., 257 N. Y. 423, 178 N. E. 745; 78 A. L. R. 323; 24 Am. Eng. Ency. of Law (2nd ed.) 740, 741.

The order granting a new trial should be, and the same is, hereby reversed and the cause is remanded with directions to enter final judgment for the plaintiff below on the verdict, unless a motion in arrest of judgment or for judgment *non obstante veredicto* shall be made and prevail.

TERRELL, C. J., WHITFIELD, BROWN, and CHAPMAN, J. J., concur.

THOMAS, J., dissents.